PHŒNIX MUTUAL LIFE INSURANCE COMPANY, APPELLEE, V. CITY OF LINCOLN ET AL., APPELLANTS.

FILED APRIL 8, 1912. No. 17,450.

1. **Appeal: REMAND: NEW PARTIES: LAW OF THE CASE.** Where, upon an appeal to this court, a judgment of the district court is reversed and the cause is remanded with directions to bring in other and additional defendants for the purpose of enabling the court to determine the rights of all parties interested in the subject matter of the action, such order will be adhered to in all subsequent stages of the litigation.

2. **Municipal Corporations: CONSTRUCTION OF VIADUCT: ACTION FOR DAMAGES: JOINDER OF CAUSES OF ACTION.** A petition in an action for damages to abutting property caused by the construction of a viaduct upon a city street over and across the tracks of a railroad company is not vulnerable to the objection that two causes of action are improperly joined, because the city and the railroad are joined as defendants.

3. ——: ——: **LIABILITY FOR DAMAGES.** The provisions of article I, ch. 13, Comp. St. 1909, authorizing cities to require railroad companies to build viaducts over and across their tracks where they intersect streets and highways, are governmental in character, and the reasonable exercise of that authority creates no liability on the part of the city for damages to property abutting on such viaducts.

4. ——: ——: ——. Appraising the damages caused by the construction of a viaduct in accordance with the provisions of subdivision 3, sec. 129, art. I, ch. 13, Comp. St. 1909, does not of itself create a liability against the city for the payment of such damages, and where the city has in no way bound itself by contract or otherwise for such payment, no action can be maintained against it to recover the damages to property abutting upon the viaduct.

5. **Railroads: STREET CROSSINGS: DUTY TO MAINTAIN.** By the statutes of this state railroad companies, when they lay their tracks over and across public streets or highways, are charged with the duty of restoring such streets or highways to their former usefulness; and that duty is not discharged when a street or highway is restored to its proper condition at the time the railroads are constructed. The duty is a continuing one, and embraces such alterations and improvements as may afterwards be made necessary by the growth of the city and the increased travel.

6. ———: ———: CONSTRUCTION OF VIADUCT: LIABILITY FOR DAM-
AGES. In the performance of such duty railroads may be re-
quired, when necessary, to construct viaducts over and across
their tracks, and are liable for damages to any person whose
property is injured by such construction.

APPEAL from the district court for Lancaster county:
LINCOLN FROST, JUDGE. *Reversed with directions.*

*Fred C. Foster, D. H. McClenahan, James E. Kelby,
Byron Clark, B. H. Dunham, Hall & Bishop, F. A. Brogan*
and *B. P. Waggener,* for appellants.

*Samuel J. Tuttle, contra.*

BARNES, J.

On the former hearing of this case a judgment for the
plaintiff was reversed, and the cause was remanded to the
district court, with directions to make the railroad com-
panies defendants, in order to enable the court to deter-
mine the question of the liability, as between them and the
city of Lincoln, for damages to the plaintiff's property
abutting upon what is known as the "Tenth street viaduct,"
caused by the erection of that structure. *Phœnix Mutual
Life Ins. Co. v. City of Lincoln,* 87 Neb. 626. When the
mandate was returned to the district court the plaintiff
filed its amended petition; summons was issued thereon
and served upon the railroad companies. They appeared
and demurred separately upon the ground that the facts
stated therein were not sufficient to constitute a cause of
action as against them. The demurrers were overruled,
and, answering over, they alleged the facts which they now
contend constitute a complete defense to any liability on
their part. There being no dispute as to the facts, and
the amount of plaintiff's damages having been settled for
the purpose only of the trial by stipulation, a joint judg-
ment was rendered against them and the city of Lincoln,
from which all of the defendants appealed.

The record discloses that the railroad tracks of the

Chicago, Burlington & Quincy Railroad Company, the Missouri Pacific Railway Company, and the Chicago & Northwestern Railway Company cross what is known as "Tenth street," in a populous part of the city of Lincoln, and at the same point; that Lincoln is a city of the first class, having a population of 40,000 and less than 100,000 inhabitants; that at a regular election held on the 7th day of May, 1907, the question of the necessity for the construction of a viaduct on Tenth street over and across the railroad tracks of the above named defendants was duly submitted to the electors of that city, and the majority of said electors voted to require such construction; that thereafter an ordinance was enacted declaring it necessary for the public safety and convenience that said viaduct be constructed by the railroad companies; that the companies refused to comply with the provisions of the ordinance, and a mandamus suit was commenced on behalf of the city to require the defendants to build said viaduct; that pending the mandamus proceeding the railroad companies entered into a stipulation with the city whereby they agreed to build the viaduct, and the city agreed to commence proceedings for the appraisement of damages to abutting property owners, and thereafter plaintiff's damages were appraised and fixed at the sum of $500, from which appraisement the plaintiff appealed to the district court, where judgment was rendered against the city of Lincoln for that amount; and from that judgment the city prosecuted the former appeal. When the mandate was returned to the district court plaintiff complied with the directions contained therein, and the proceedings above set forth were had, and, from the judgment therein rendered against them, all of the defendants have appealed.

It is contended by the railroad companies that there was a misjoinder of causes of action, for which they insist the judgment of the district court must be reversed. It is argued that the action, so far as the city was concerned, was founded on the provisions of its charter,

while the action as against them is one in tort, and that such causes of action cannot properly be joined. We are of opinion that this contention is unsound. Section 21 of the Bill of Rights provides: "The property of no person shall be taken or damaged for public use without just compensation therefor." It must be conceded that the viaduct, which the railroad companies were required to build, was necessary, not only for the benefit of the general public, but for the safe and convenient operation of the defendants' trains over and across a public thoroughfare. It must also be conceded that the construction and maintenance of the viaduct upon the highway in front of the plaintiff's lots, adjacent to and abutting thereon, created such additional burden as to entitle it to maintain an action for damages therefor. *Hastings & G. I. R. Co. v. Ingalls,* 15 Neb. 123.

Section 10578, Ann. St. 1909, provides, among other things, that every railroad corporation shall maintain and keep in good repair all bridges, with their abutments, which such corporation shall construct for the purpose of enabling their road to pass over or under any turnpike or public road. It is admitted that by its charter provisions the city had the power to require the railroad companies to construct the viaduct in question, and had lawfully exercised that power. It therefore follows that, when constructing the viaduct in compliance with the orders of the city, the companies were acting under lawful authority, and their act cannot be said to have been wrongfully or tortiously done. We have then a lawful act properly done which gave the plaintiff a right of action, which if originally brought against the railroad companies and the city together would not have been a misjoinder of causes of action.

It is next contended by the railroad companies that this case was originally commenced against the city by plaintiff's appeal from the award of damages, to which they could not thereafter lawfully be made parties, for that would amount to the bringing of another or different ac-

tion against them. In disposing of this contention it is sufficient to say that by our former judgment the proceeding of which complaint is now made was required in order to determine the rights of all of the parties interested in the subject of the litigation. The order thus made is the law of the case, and is, and will be, adhered to at all stages of this action.

It may be further said that, when the railroad companies were served with a summons duly issued upon the plaintiff's amended petition, they appeared generally, and thus conferred jurisdiction upon the court for all purposes; and it must be observed that, if they are liable to the plaintiff at all for the damages occasioned by the construction of the viaduct, it can make no difference to them whether that liability is determined in this action, or in a separate suit brought for that purpose.

This brings us to the main question presented for our determination, which is, whether the plaintiff is entitled to recover against both the city and the railroad companies, and, if not against both, which of them is liable for the damages to plaintiff's property caused by the construction of the viaduct? From what has already been said there can be no doubt of plaintiff's right of recovery. It is contended, however, that no judgment can be rendered against the city, because it acted in its governmental capacity only, and, if this be so, the contention is well founded. It clearly appears that the city of Lincoln in ordering the railway companies to construct the viaduct in question acted pursuant to the governmental power conferred upon it by its charter provisions for the protection of life and property. The exercise of such power does not of itself subject the municipality to a private action for damages. 2 Elliott, Roads and Streets (3d ed.) sec. 890 (702); *Wagner v. Portland*, 40 Or. 389; *Burkam v. Ohio & M. R. Co.*, 122 Ind. 344; *Allentown v. Kramer*, 73 Pa. St. 406; *Murphy v. Chicago, R. I. & P. R. Co.*, 247 Ill. 614; 3 Dillon, Municipal Corporations (5th ed.) sec. 1159.

It is claimed by the railroad companies that by caus-

ing plaintiff's damages to be appraised the city rendered itself liable therefor. We cannot assent to this proposition. By the section of the statutes above mentioned the city was authorized to provide for appraising, assessing and determining the damages caused to any property by the construction of the viaduct and its approaches; but nothing is contained therein which requires the city to pay such damages. This section also provides that the damages may be paid by the city and assessed against the property benefited; but it contains the further provision that the mayor and council shall have power,. whenever any railroad company fails, neglects or refuses to erect, construct, reconstruct or repair any viaduct or viaducts after being required so to do, as therein provided, to proceed with such work by contract in such manner as shall be provided by ordinance, and assess the costs thereof against the property of the railroad company or companies required to do the same; and such cost shall be a valid lien against such property, and be also a legal indebtedness of said company or companies in favor of the city, and be enforced and collected by suit in the proper court. It must be said, in passing, that the damages occasioned by the construction of a viaduct are a necessary part of the costs of such construction. So it seems clear, from a consideration of that section, that it was the intention of the legislature to relieve the city from any liability for the cost of such construction; and that the provision relating to the appraisement of damages must have been inserted therein solely for the benefit of the railroads. This question was before the supreme court of Connecticut in *Burritt v. City of New Haven,* 42 Conn. 174, where, in an able and exhaustive opinion, it was held that the city was not liable for damages to abutting property by reason of the construction of a viaduct over and across the tracks of the New Haven & Northhampton Railroad Company. A careful examination of the record satisfies us that neither by any act, stipulation or agreement on its part has the city rendered itself liable for the

damages to plaintiff's property. It follows that the judg-
ment against the city of Lincoln must be reversed.

But one question remains for consideration, which may.
be stated as follows: Upon the undisputed facts of this
case, are the railroad companies liable to abutting prop-
erty owners for the damages caused by the construction
of the viaduct? Railroads are given the right to lay their
tracks in and across the streets of the municipalities of
this state by statute, and this right carries with it a cor-
responding duty on their part to construct and maintain
at all times proper and safe crossings on the streets in-
tersected. *Omaha & R. V. R. Co. v. Brady,* 39 Neb. 27. It
would therefore seem that, when such companies in the
performance of that duty are required to construct and
maintain viaducts, they are liable for the cost of such
construction, and all of the necessary incidents thereto.
The facts of the case of *Burritt v. City of New Haven,*
*supra,* are like those in the case at bar. That is a leading
and well-considered case. It was there said: "The priv-
ilege of crossing the streets of the city is a part of the
franchise of the company, and the necessary approaches
constructed for the purpose of restoring city streets to
their former usefulness under and as a condition of the
exercise of the privilege are a part of the railroad struc-
ture authorized by its charter, and in their erection a
party incidentally injured has as perfect a remedy against
the company for consequential damages, as for a direct
injury by it in the original construction of its railroad.
The obligation to make compensation is as strong in one
case as in the other, and to the discharge of that obliga-
tion in the manner prescribed it impliedly bound itself by
its acceptance of its charter. *Parker v. Boston & M. R.
Co.,* 3 Cush. (Mass.) 107, 116; *Bradley v. New York & N.
H. R. Co.,* 21 Conn. 294, 310.

"It is insisted that this case is essentially different from
the one last cited, because here the bridge is found to
have been required by public convenience and necessity
only, while there it was for the sole benefit and accom-

modation of the railroad company. We do not see that this distinction affects the obligation of the company in this particular. If public convenience and necessity, by the growth of the city and the resulting increase of travel, require the change in order to restore the street to its former usefulness, the duty of the company under its charter, which was before inchoate, is complete, and the same responsibility adheres to it as if the work was demanded for its corporate benefit alone; and to the responsibility in the performance of the work are attached all the legal consequences which flow from the improper and injurious performance of it. The fact that the duty is by law imposed upon the company is sufficient to charge it with all the consequences of such an execution of it as results in injury to others." To the same effect are *State v. St. Paul, M. & M. R. Co.*, 35 Minn. 131; *State v. Minnesota Transfer Co.*, 80 Minn. 108; *State v. St. Paul, M. & M. R. Co.*, 98 Minn. 380; *Northern P. R. Co. v. State*, 208 U. S. 583.

The ordinance under which the railroad companies were granted the right to cross Tenth street provided that, by the acceptance and exercise of the rights so conferred, the companies would save and keep the city harmless from the payment of any and all damages growing out of the exercise of those rights. By exercising the right granted by this ordinance, the railroad companies assumed the obligations thereby imposed; and it necessarily follows that they are liable for the payment of all damages occasioned, not only by the original occupation, but also the necessary expense of making all needful and proper changes in the situation in order to insure to the public a safe and suitable means of travel upon that street; and it can make no difference whether they performed that obligation voluntarily or under legal compulsion.

From the foregoing we are of opinion that both upon principle and precedent the railroad companies are liable to the plaintiff for the damages occasioned by the con-

struction of the viaduct, and the judgment of the district court as to them should be affirmed. The record, however, contains a stipulation which leaves the question as to the amount of plaintiff's damages open for futher consideration, and the judgment of the district court is therefore reversed and the cause is remanded, with directions to allow the parties to litigate that question if they so desire; and, if not, then that court will render a judgment in favor of the plaintiff for the amount stipulated, and against the railroad companies.

REVERSED.

SEDGWICK, J., concurs in the conclusion.

REESE, C. J., not sitting.