BEN A. GREENWOOD ET AL., APPELLEES, V. CITY OF LINCOLN,
NEBRASKA, APPELLANT.

55 N. W. 2d 343

Filed October 31, 1952.   No. 33175.

*Cline, Williams, Wright & Johnson,* and *C. Russell
Mattson,* for appellant.

*John McArthur,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellees seek to recover damages that they claim were caused them by appellant intentionally and wrongfully destroying a large number of raspberry bushes then growing on the land of appellees located in the city of Lincoln.

The trial of the case produced a verdict and judgment for appellees. The motion of appellant to set aside the verdict returned and the judgment rendered against it and to enter a judgment for it, as the appellant had requested in a motion at the close of the evidence, or in the alternative for a new trial of the case was denied. The case is here by appeal.

The gist of the claim of appellees as made by their petition is that they were the owners of an acreage of land in the city of Lincoln on which a large number of raspberry bushes of producing age and condition were then growing; and that appellant, a city of the primary class, intentionally and wrongfully without the knowledge and in the absence of appellees destroyed the raspberry bushes and thereby caused appellees substantial damage. Appellant denied the allegations of the petition except it admitted that appellees were the owners of the real estate; that Lincoln was a city of the primary class; and that the claim of appellees filed with the city was denied. Appellant further asserted that the real estate was overgrown with various tall weeds; that complaint of the existence of the weeds was made to it; that it gave notice to appellees to cut and destroy the weeds in accordance with an ordinance of the city; that appellees cut the weeds on a small strip of the premises but otherwise disregarded the notice and demand of the city; that it thereafter, by its servants and agents, cut the weeds in the time and manner provided by the ordinance; and that the acts of the city with reference to the property of appellees were in performance of a governmental function of the city of Lincoln for which activity there was no liability of the city to respond in

damages for any injury or loss thereby occasioned appellees.

The record discloses that at the time important to this case the charter of appellant authorized it to provide for and to require the removal and destruction by the owners of weeds and worthless vegetation growing on any lot or land or street or alley abutting thereon within the city. If the owners failed or refused after five days' notice by personal service to do so, the city by its proper representative was required to destroy the weeds and vegetation and to assess the cost thereof against the real estate. An ordinance passed and effective at that time, by virtue of and in harmony with the authority of the charter provision, required every owner of real estate in the city to cut and clear it of weeds and worthless vegetation on or before May 15, July 15, August 15, and November 15 of each year. If the owner failed to do so on five days' notice given by the city, it was required to cut the weeds and vegetation and assess the cost thereof against the real estate.

Complaint was made to appellant of weeds growing on the real estate of appellees. The weed inspector of the city thereafter on September 27, 1950, examined the premises and found "Tall weeds, sunflowers, and the likes" growing thereon—weeds that needed to be cut. He saw no indication of any crop or raspberry bushes growing in the weeds. He prepared and sent to appellees on September 29, 1950, a notice and demand that they cut and remove the weeds and worthless vegetation then growing on their premises within five days or the city would do so and assess the cost against the real estate. The notice and demand was received by appellees on the day it was dated. The growth of weeds and useless vegetation was removed by the owners from a small part of the premises but otherwise the notice and demand was entirely disregarded, either because of indifference or a determination to resist the request of the city, and because thereof on October 12, 1950, a servant

of the city mowed the premises with a power mower belonging to the city. He did this without difficulty or unusual development. It was this operation that appellees claimed destroyed a large number of their growing and producing raspberry bushes.

Appellees planted raspberry bushes in the spring of 1947. They let the natural vegetation consisting of grass and the natural weeds grow on the premises where the raspberry bushes were planted. There was a swale through this area. It overflowed in times of considerable precipitation, and the weeds and vegetation had a tendency to keep the raspberry bushes from washing out. There was a considerable natural growth on the premises consisting of wild grass, sunflowers, rag weed, and all kinds of wild vegetation that is included in natural growth. This area was not cultivated and nothing was done to interfere with the growth of the wild vegetation thereon from the time the raspberry plants were planted in 1947, until and during the year 1950. Some of the wild vegetation was as much as five feet tall.

A determination of the capacity in which appellant was acting at the time of the acts complained of in this case is important and may be decisive. A municipal corporation occupies a dual relation to its citizens and the public. In the performance of its governmental or public duties it is the representative of the state. It has the governmental powers conferred and the burdens imposed upon it by its charter, and is entitled to the privileges, immunities, and exemptions given it by law. The governmental functions of a city are for the benefit of the public and not the corporate entity. A municipal corporation has and is obligated also to perform corporate duties, those expressly imposed upon it by its charter, and also those that devolve upon it by reason of the governmental powers and privileges it has, such as the duty to maintain its streets, alleys, and sidewalks in a reasonably safe condition for their intended use. Its corporate functions are for the benefit of the city as

well as advantageous to the public. A municipal corporation is sometimes authorized to own and conduct a business or commercial enterprise and when it engages therein it is said to be acting in its private or proprietary capacity. It has no duty to conduct such an undertaking and when it does it is entirely voluntary on its part and it thereby enters into a third relation distinct from the dual relations above noted. While occupying this third relation it is engaged in conducting a business and is subject to the law and procedure applicable to a private corporation or person conducting a like business. It has in that regard no governmental functions or corporate duties and has no more privileges or exemptions than a private corporation. Henry v. City of Lincoln, 93 Neb. 331, 140 N. W. 664, 50 L. R. A. N. S. 174; Platte Valley Public Power & Irr. Dist. v. Lincoln County, 144 Neb. 584, 14 N. W. 2d 202, 155 A. L. R. 412.

Appellant argues that the doctrine of governmental immunity interposes to relieve it from liability in this case. It is a well-settled doctrine in this jurisdiction, in harmony with the conclusion of a large number of the courts of the country, that a municipality is not liable for the negligence or misconduct of its officers, agents, or servants in the exercise or performance of public or governmental functions from which it derives no profit, benefit, or advantage, and that the rule of respondeat superior does not apply thereto. In Burke v. City of South Omaha, 79 Neb. 793, 113 N. W. 241, this court said: "The state cannot, without its consent expressed through legislation, be sued for injuries resulting from an act done in the exercise of its lawful governmental powers and pertaining to the administration of government. When this power is exercised, as it must be, through an agent, the agent cannot be sued for injuries resulting from a strict performance of the agency. In such case the act is regarded as the act of the state, and not of the agent, who is the mere instrument of the state, and nothing more; and, if the agent employs serv-

ants in the performance of the act, he cannot be sued for injuries resulting from the negligence of the servants. The rule of respondeat superior does not apply. The state, and not the agent, is the real superior. * * * Municipal corporations are agents of the state in the exercise of certain governmental powers. The preservation of the health and peace of its inhabitants and fire protection afforded the property owner are governmental functions. Gillespie v. City of Lincoln, 35 Neb. 34; Village of Verdon v. Bowman, 5 Neb. (Unof.) 38." See, also, Toft v. City of Lincoln, 125 Neb. 498, 250 N. W. 748; Thompson v. City of Albion, 115 Neb. 208, 212 N. W. 37; Caughlan v. City of Omaha, 103 Neb. 726, 174 N. W. 220; Sheets v. City of McCook, 95 Neb. 139, 145 N. W. 252, 51 L. R. A. N. S. 321; Phoenix Mutual Life Ins. Co. v. City of Lincoln, 91 Neb. 150, 135 N. W. 445.

The power and duty of the city to require the destruction and removal of weeds and undesirable vegetation growing within the city are not questioned. It could not be. The state has granted the cities of the primary class the right to require the owner of real estate to destroy such vegetation and has made it the duty of the city to do so if the owner does not. § 15-268, R. S. 1943. The charter provision and ordinance of appellant are in agreement with the terms of the grant of authority by the state. This is the exercise of the police power for the benefit, protection, comfort, and health of the public. It is a governmental or public function. The activity of the weed inspector and the operation of the mower by the servant of the city in destroying the weeds and vegetation on the premises of appellees did not and could not result in any liability of the city to appellees.

In McFadden v. Town of Jewell, 119 Iowa 321, 93 N. W. 302, 60 L. R. A. 401, 97 Am. S. R. 321, it did not appear by whom the servant of the town was employed to cut the weeds and grass obstructing an alley. While in the work of cutting the weeds and grass he negligently injured a child of tender years. The court said: "Now,

whether it was the town council, or a committee thereof on public health or streets and alleys, or the street commissioner of the town, is immaterial, in our view. Certain it is that in the matter of its control over the streets and alleys within the incorporate limits—and, to make the reference direct, in the matter of clearing the alley in question of weeds—the town was in the exercise of police powers possessed by it as an incident to its existence as a municipal corporation.

"It is well settled that where an act done by an officer or employe of a municipal corporation is essentially in the line of the performance of an official duty, public in character, the municipality cannot be made liable for a tort committed or wrong done by such officer or employe while engaged as such in the performance of the duty in question. That acts done in the execution of police powers and in the enforcement of police regulations are in the nature of the performance of a service for the benefit of the general public cannot well be questioned." See, also, Norman v. City of Chariton, 201 Iowa 279, 207 N. W. 134.

In City of St. Louis v. Galt, 179 Mo. 8, 77 S. W. 876, 63 L. R. A. 778, the court said: "The word 'weed' has a common, everyday, meaning to the mind of every man. * * * it is a fact of common information, of which courts may properly take judicial notice, that a high, rank growth of weeds in a populous community has a strong tendency to produce sickness and to impair the health of the inhabitants, and so may be a nuisance in such locality, notwithstanding they may be comparatively innocuous in the country, when far away from human habitation. * * * Therefore, the right of the defendant to grow weeds upon his city lot is subordinate to the right of society that he shall not do so, because he would thereby endanger the health of others. * * * The ordinance in question strikes at a cause that is known to operate against the public health, and it is therefore a valid exercise of the police power conferred upon the

city of St. Louis." See, also, Village of Verdon v. Bowman, 5 Neb. Unoff. 38, 97 N. W. 229; Lowe v. Conroy, 120 Wis. 151, 97 N. W. 942, 66 L. R. A. 907, 102 Am. S. R. 983, 1 Ann. Cas. 341; Franklin v. City of Seattle, 112 Wash. 671, 192 P. 1015, 12 A. L. R. 247; Annotation, 12 A. L. R. 1136; 18 McQuillin, Municipal Corporations (3d ed.), § 53.35, p. 227; 25 Am. Jur., Health, § 16, p. 295; 37 Am. Jur., Municipal Corporations, § 296, p. 942.

Appellees assert that appellant ratified the acts of its servants who caused the destruction of the raspberry bushes. This position cannot be sustained. The acts complained of herein were under the police power of the city and were done in performance of a duty in the governmental capacity of the city, and even though the acts were negligently or wrongfully done by those to whom the work was entrusted the city is not and could not be liable to the persons injured or damaged by reason of any misconduct of the agents or employees of the municipality. What it had no authority to do it could not ratify when done by another. In Brown v. City of Union Point, 52 Ga. App. 212, 183 S. E. 78, it is said: "* * * For acts done in the illegal performance of purely governmental functions * * * however illegally the authority may be exercised, the municipality is not liable. * * * Nor can a municipality ratify the unlawful acts of its subordinate officials done in pursuance of its governmental functions, so as thereby to make itself liable for such acts." In Bates v. City of McComb, 181 Miss. 336, 179 So. 737, it is said: "A city's employment of an incompetent or vicious person who is subsequently guilty of a tort while engaged in discharge of a governmental duty * * * does not make city liable for his acts and if city is not liable in the first instance, it cannot be made liable by ratification." In Nashville Trust Co. v. City of Nashville, 182 Tenn. 545, 188 S. W. 2d 342, the court said: "A city is without power to enter into a contract rendering it liable for the negligence of its servants in the exercise of a governmental function." In Calwell

v. City of Boone, 51 Iowa 687, 2 N. W. 614, 33 Am. R. 154, the court said: "It is contended, however, that if a city is not liable in the first instance for the illegal acts of its officers in enforcing a police regulation, it may become liable by ratification. But a city has no power to authorize a police officer to commit an unlawful act, and what it cannot do directly it cannot do indirectly by ratification." See, also, Buttrick v. City of Lowell, 83 Mass. 172, 79 Am. D. 721; 63 C. J. S., Municipal Corporations, § 763, p. 56.

Appellant should have been awarded a verdict by instruction of the trial court as it requested at the close of the evidence and its motion for a judgment in its favor should have been granted.

The judgment should be and it is reversed and the cause is remanded with directions to the district court for Lancaster County to render and enter a judgment of dismissal of the case.

REVERSED AND REMANDED WITH DIRECTIONS.

Chappell, J., concurs in the result.